| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF: | ) ) ) | APPEAL NO. 89-017 CIVIL NO. 87-295 |
| MARIANA C. DELEON GUERRERO, | ) ) | OPINION |
| Deceased. | ) ) | |

Argued and submitted on May 31, 1990.

Counsel for Appellant, Admini-
  stratrix Diana DLG. Villagomez:

Douglas F. Cushnie, Esq.
P.O. Box 949
Saipan, MP 96950

Counsel for Defendant Appellee,
  Ok Soon Sa Guerrero:

David A. Wiseman, Esq.
Law Offices of Wiseman & Eason
P.O. Box 404
Saipan, MP 96950

Counsel for the Administrator
  of the Estate of Francisco C.
  Deleon Guerrero, Leonard Sine:

John A. Manglona, Esq.
White, Novo-Gradac & Manglona
P.O. Box 222 CHRB
Saipan, MP 96950

Counsel for Appellee, Ricardo
  Camacho:

Kenneth L. Govendo, Esq.
P.O. Box 2377
Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice; VILLAGOMEZ, Justice; and ATALIG, Special Judge.

302

VILLAGOMEZ, Justice:

## FACTS

In 1952, Mariana Camacho and Francisco Deleon Guerrero were married. Both were Chamorro and of Northern Marianas descent. They had three children: Ronald, Mariano, and Diana. In addition, Francisco fathered two children outside of the marriage, David and Ricardo.

In 1978, Mariana died intestate. Thereafter, Francisco married Ok Soon Sa. Francisco's second marriage produced two more children.

In 1987, Francisco died intestate. Upon his death, he had seven children.

While Francisco was married to Mariana, he acquired property on Saipan, Lot No. 1742, through court action. In re Estate of Guerrero, 3 T.T.R. 546 (Trial Div. 1968). This land constituted his share of an inheritance from his father, who died in 1950.

Francisco and Mariana improved Lot No. 1742 by constructing houses thereon which they rented out. From the rental proceeds they purchased another parcel of Saipan property during their marriage, Lot No. 004 D 39.

After Mariana died, Francisco purchased two more Saipan parcels, Lots No. 1763-1 and 002 I 12.

Following Francisco's death, his estate and Mariana's estate were probated concurrently in the Commonwealth Trial Court (now Superior Court). On October 26, 1989, the Superior Court entered an order adjudging that there were no assets to be probated in

Mariana's estate. In re Estate of Guerrero, Civil Action No. 87-295 (N.M.I. Super. Ct. Oct. 26, 1989). The court held that all parcels mentioned above and all personal property possessed by Francisco and Mariana at the time of her death belonged to Francisco, and that, upon his death, all of the property vested in his estate.

The administratrix of Mariana's estate, Diana DLG. Villagomez, has appealed. She contends that when Mariana died, her estate consisted of half of all property (both real and personal) acquired during the marriage. Villagomez claims that all of the property is "family property" (including the two lots purchased by Francisco after Mariana's death), half of which passed exclusively to Mariana's three children (Ronald, Mariano, and Diana) upon her death. Villagomez maintains that the other half of the property passed after Francisco's death in equal shares to all seven of his children. Under Villagomez' claim, Mariana's three children are each entitled to one-third of one-half of the property, and each to an additional one-seventh of the remaining half of the property. Francisco's other children would thus each take only one-seventh of one-half of the property.

Villagomez further contends that the Superior Court abused its discretion in excluding testimony indicating that Francisco believed that the parcels acquired during his marriage with Mariana belonged to both he and Mariana.

## ISSUES

1. Whether the trial court made an error of law when it ruled

that Mariana's estate had no assets to be probated.

2. Whether the trial court abused its discretion when it excluded testimony concerning Francisco's beliefs regarding ownership of the land.

## DISCUSSION

**1. Whether the trial court made an error of law when it ruled that Mariana's estate had no assets to be probated.**

The trial court concluded that the present Commonwealth probate code, 8 CMC § 2101 et seq., did not apply in the probate of Mariana's estate because it did not become effective until February 14, 1984, after her death. It further ruled that since there was Chamorro customary law applicable to the proceeding and the facts of the case, U. S. common law did not apply. 1 TTC § 103.[1] The court applied customary law pursuant to 1 TTC § 102.[2]

Under customary law at the time of Mariana's death in 1978, the estate of a married woman who predeceased her husband did not

---

[1]"The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Trust Territory in cases to which they apply, in the absence of written law applicable under Section 101 of this Chapter or local customary law applicable under Section 102 of this Chapter to the contrary and except as otherwise provided in Section 105 of this Chapter; PROVIDED, that no person shall be subject to criminal prosecution except under the written law of the Trust Territory or recognized local customary law not inconsistent therewith."

[2]"The customs of the inhabitants of the Trust Territory not in conflict with the laws of the Trust Territory shall be preserved. The recognized customary law of the various parts of the Trust Territory shall have the full force and effect of law so far as customary law is not in conflict with the laws mentioned in Section 101 of this Chapter."

include half of all property possessed by the marital parties at the time of her death. Instead, the husband assumed ownership of all property.[3]

■ This particular customary law applied only to the land (Lot No. 004 D 39) purchased by Francisco and Mariana during their marriage.[4] Thus, the trial court was correct in ruling that none of the land acquired by Francisco, individually or with Mariana during their marriage, vested in Mariana's estate at the time of her death.[5] Instead, Francisco assumed ownership and the land became part of his estate when he died.

■ Lot No. 1742 which was inherited by Francisco from his father constituted "iyon manaina," translated to English as "ancestor's ownership." In re Estate of Camacho, 1 CR 395, 399 (C.T.C. 1983).[6] Under Chamorro customary law, "iyon manaina" passes down to the owner's children. Id. In this case, the land (Lot No. 1742) passed to Francisco and became his separate property. The trial

---

[3]See A. Spoehr, Saipan: The Ethnology of a War-Devastated Island 140 (Chicago Natural History Museum, 1954), and Office of the High Commissioner, Trust Territory of the Pacific Islands, Land Tenure Patterns 223 (1958).

[4]As to the other property, other rules of law apply as will be discussed infra.

[5]Had Mariana died after February 15, 1984, her estate would have been subject to the current probate code. 8 CMC § 2102. Under 8 CMC § 2903(b), her three children would have acquired one-half of Lot No. 004 D 39.

[6]The Camacho court translated the Chamorro word "iyon" as "land." That is incorrect. "Iyon" means ownership. The Chamorro word for land is "tano," and ancestor's land would be "tano manaina." "Iyon manaina" is not restricted to land. It may include personalty.

court was correct in concluding that half of Lot No. 1742 did not vest in Mariana's estate at the time of her death. Francisco did not transfer any interest in such land to Mariana.

With respect to the parcels purchased by Francisco after Mariana's death, there is no statute, customary law, or common law rule supporting the contention that one-half of such land vested in Mariana's estate. The trial court was therefore correct in concluding that her estate has no interest in such land.

With respect to Villagomez' claim to personal property acquired during the marriage, the trial court noted that she offered no proof of Mariana's personal property existing on the date of Mariana's death except three bank books listing accounts in the names of Francisco or Mariana Guerrero.

The bank accounts were held as a tenancy in the entirety. As such, upon Mariana's death, the funds in the accounts vested solely in the surviving spouse, Francisco.[7] The trial court correctly concluded that Mariana's estate did not prove any personal property interest.

2. Whether the trial court abused its discretion when it excluded testimony concerning Francisco's beliefs regarding ownership of the land.

---

[7]64 A.L.R. 2d 8 Annotation: Estates by Entirety in Personal Property (1959). 10 Am.Jur.2d, Banks § 373 (1963); Black's Law Dictionary 1313 (5th Ed. 1979) states, "A tenancy which is created between a husband and wife and by which together they hold title to the whole with right of survivorship .... It is essentially a 'joint tenancy,' modified by common-law theory that husband and wife are one person, and survivorship is the predominant and distinguishing feature of each."

The trial court excluded testimony from two witnesses which, according to Villagomez' brief, would establish "that Francisco C. Guerrero considered the property which his father owned and that he ultimately received as a result of litigation with his sister and others, as belonging to both he and Mariana." Appellant's brief at 11 (emphasis added). The testimony also relates to the other parcel acquired during the marriage. Villagomez contends that under Com.R.Evid. 801(d)(2),[8] the testimony does not constitute hearsay because it is an admission by a party opponent. Villagomez also maintains that even if it does constitute hearsay, it falls within the family or community history exceptions in Com.R.Evid. 803(19) and (20).[9]

█It is irrelevant whether Francisco considered some or all the

---

[8]"A statement is not hearsay if:

(2) . . . [t]he statement is offered against a party and is

(A) his own statement in either his individual or a representative capacity . . .."

[9]"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(19) Reputation concerning personal or family history. Reputation among members of his family by blood, adoption, or marriage, or among his associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of his personal or family history.

(20) Reputation concerning boundaries or general history. Reputation in the community, arising before the controversy, as to boundaries of or customs affecting lands in the community and reputation as to events of general history important to the community or State or nation in which located."

308

land to be owned by he and his wife together. It is also irrelevant whether the testimony offered by Villagomez is not hearsay or falls within exceptions to the hearsay rule. Under Chamorro custom existing when Mariana died, even if she had an interest in the land, upon her death ownership vested in her husband. Therefore, we find no error on the part of the trial court in excluding the testimony of the two witnesses.

For the reasons set forth above, the decision of the trial court is AFFIRMED.

Entered this ___20th___ day of _____July_____, 1990.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
PEDRO M. ATALIG, Special Judge